IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JIMMY RANDALL SHOULDERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | CIV-06-890-C |
| v. | ) | |
| | ) | |
| WALTER DINWIDDIE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging his conviction for

Murder in the First Degree entered in the District Court of Cleveland County, Case No. CF-

95-426, for which Petitioner is serving a sentence of life imprisonment.  Respondent has

responded to the Petition and filed relevant state court and institutional records with the

response and supplemental response. Petitioner has filed a reply to the response and another

reply to the supplemental response.  The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the

following reasons, it is recommended that the Petition be DISMISSED as untimely.

I. Background

In March 1995, Petitioner was charged with murder in the District Court of Cleveland

County, Case No. CF-95-426, for allegedly shooting his common law wife's brother on

1

September 20, 1980.  On that date in 1980, Petitioner was injured by two self-inflicted gunshot wounds.  As a result of these wounds, Petitioner sustained a head injury resulting in mental and physical impairments.  Petitioner was in a coma following the shooting, and he later moved to Kentucky where he married and fathered two children.  After his arrest in March 1995 in Kentucky, Petitioner was transported to the Cleveland County Jail and then to Griffin Memorial Hospital.   At his court-appointed attorney's request, Petitioner underwent a competency evaluation at Griffin Memorial Hospital.  This evaluation was conducted by two mental health professionals employed by the State of Oklahoma, Dr. Featherston and Dr. Head.   Another state mental health professional, Dr. Jones, also conducted a competency evaluation of Petitioner for the prosecution.  Following these evaluations and at the joint request of the prosecution and the defense, a three-day competency hearing was conducted before a jury in May 1995.  At the completion of this hearing, the jury rendered the verdict that Petitioner was competent to stand trial.   A preliminary hearing was conducted in the criminal matter on June 16, 1995, and July 6, 1995. At the conclusion of the preliminary hearing, Petitioner was ordered bound over for trial.

On July 13, 1995, Petitioner appeared in court with his attorney and entered a plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).  An extensive hearing was conducted with respect to the voluntariness of the plea, Petitioner's competence to enter the plea, and Petitioner's understanding of the plea and its consequences.  Petitioner's plea was accepted by the court, and he was sentenced consistent with a plea agreement to life imprisonment.  Petitioner moved to withdraw the plea on the day it was entered, and

Petitioner subsequently applied for an appeal out of time on October 8, 1996.  Petitioner was granted leave to appeal out of time, and new counsel was appointed to represent him.  A hearing on the motion to withdraw the plea was conducted on February 20, 1997.  The motion was denied.   Petitioner appealed the conviction through a petition for writ of certiorari to the Oklahoma Court of Criminal Appeals ("OCCA").   In his brief filed in the appeal, Petitioner asserted that (1) the case should be remanded for a new competency hearing because the jury which determined his competency was instructed to employ an unconstitutional burden of proof pursuant to Cooper v. Oklahoma, 517 U.S. 348 (1996), and (2) Petitioner's plea was not entered knowingly and voluntarily because Petitioner was incompetent when he entered the plea.  Response, Ex. 1.  The OCCA remanded the case to the Cleveland County District Court to determine the feasibility of conducting a retrospective competency hearing. Response, Ex. 2A. The district court determined that it was feasible to conduct a retrospective competency hearing and set the matter for a hearing.  On  June 9, 1998, Petitioner appeared with his counsel for the purpose of the hearing.  However, a formal journal entry was filed in Case No. CF-95-426 on June 11, 1998, reflecting the following announcement was made by the parties on June 9, 1998, in lieu of the retrospective competency hearing:

> Based upon the recommendation of the State of Oklahoma and agreement by the Department of Corrections, the defendant will hereby be reclassified as a "medium security" inmate and transferred to a facility reflecting such classification based upon the defendant's physical and medical condition;
> That the defendant, based upon said reclassification as agreed to by the State, hereby stipulates to his competency as was to be

3

> determined by the retrospective post-examination competency
> hearing, his present competency to enter such an agreement, and
> knowingly and voluntarily waives his right to said hearing;
> That the defendant announces his intent to dismiss his appeal
> based on the above agreement with the State;
> And that this agreement shall not restrict the Department of
> Corrections from reclassifying the defendant as necessary, based
> upon the Department of Corrections policy, including conduct
> of defendant and/or the defendant's physical and medical
> conditions.

Supplemental Response, Ex. 2.  The journal entry contains the signatures of the presiding special district judge, Petitioner's attorney, and the prosecutor.  The OCCA subsequently entered a summary opinion denying petition for writ of certiorari in <u>Jimmey Randall Shoulders v. State of Oklahoma</u>, Case No. C-97-296, on November 18, 1998. Petition, Ex. D; Response, Ex. 2. In the appellate court's opinion, the OCCA affirmed the district court's denial of Petitioner's application to withdraw his <u>Alford</u> plea.  With respect to Petitioner's first claim, the OCCA found that the issue was "moot since Petitioner stipulated to his competency at the June 9, 1998 retrospective post-examination competency hearing."  <u>Id.</u>. As to Petitioner's second claim, the OCCA found that Petitioner's plea had been "entered voluntarily and knowingly." <u>Id.</u>

Petitioner filed his first application for post-conviction relief in the Cleveland County District Court on November 9, 1999.  Response, Ex. 3.  In this application, Petitioner asserted that he was entitled to post-conviction relief because he was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel.  The application was denied by the district court on February 18, 2000. Response, Ex. 4. Petitioner did not appeal this decision.

4

In October 2004, Petitioner sent identical letters to two judges in the District Court of Cleveland County.  In this correspondence, Petitioner stated that he had been transferred to the Oklahoma State Penitentiary ("OSP") "to [his] detriment," that he had not been charged with institutional misconducts or formally reclassified, that his transfer "was [not] supposed to happen" under the agreement reached in his case with the State of Oklahoma and the Oklahoma Department of Corrections, and that he believed the presiding judge had stated in court that "if the agreement was broken that [he] could get a new trial and counsel appointed...." <www.oscn.net> (docket sheet in State of Oklahoma v. Jimmy Randall Shoulders, Case No. CF-95-426, and documents accessed on December 4, 2006).  He inquired whether the judges remembered this statement and requested the judges' assistance.

In December 2004, Petitioner filed a second application for post-conviction relief in the district court.  Response, Ex. 5.  In this application, Petitioner asserted that his first post-conviction application was "denied because my physical and mental condition prevented me from adequately presenting issue." Response, Ex. 5, at 2.  As grounds for post-conviction relief, Petitioner asserted that an "unfilled [sic] promise" warranted relief from his conviction.  In support of this claim, Petitioner contended that

> [i]n June 1998, I was induced into agreement stipulating to my competency in exchange to be reclassified as a medium security inmate.  I performed my obligation and have not done anything warranting I be reclassified.  The promise was not kept.  The State breached its part of the agreement.  I was transferred and reclassified to Oklahoma State Penitentiary for maximum security inmates and such was not suitable or appropriate to the

5

> object sought.   The material term of the agreement is
> unenforceable.   When [sic] medium security inmates are not
> transferred and reclassified to maximum security due to physical
> and mental conditions.

Response, Ex. 5, at 3.  Petitioner stated that his claim could be proved "by examining the

June 1998 agreement stipulating to my competency or the challenged portions thereof, by

court order to receive proof by affidavits, depositions, oral testimony or other evidence that

I was transferred and reclassified to the state penitentiary, or by conducting an evidentiary

hearing and appointing counsel." Id.  Petitioner further stated in the application that his claim

had not been raised in a timely appeal of the original conviction because "I was not

transferred and reclassified to maximum security in violation of the agreement until after the

time for appeal expired" and because "[t]he claim is based on newly discovered evidence and

petitioner could not have raised the issue [on direct appeal]." Id., at 4.  As his second ground

for post-conviction relief, Petitioner asserted that his right to a retrospective competency

determination under Cooper had been violated.  He supported this claim with the following

argument:

> I am a quadruplegic [sic] with mental and physical disabilities
> and was incompetent to plead nolo contende [sic].  I did not
> have sufficient present ability to consult with my lawyer with a
> reasonable degree of rational understanding, and did not have a
> rational as well as factual understanding of the proceedings.
> The Court of Criminal Appeals issued order remanding my case
> for a determination on the feasibility of a retrospective post-
> examination competency hearing, and if determined feasible, to
> conduct that hearing utilizing the new constitutionally accepted
> standard in Cooper v. Oklahoma, 116 S.Ct. 1373 (1996).  But a
> substituted competency procedure, i.e., an agreement stipulating
> to my competency was held; eventho [sic] I was incapable of

> making a competent plea of nolo contende [sic]; and the
> substituted competency procedure was inadequate for
> determining my competency to plead nolo contende [sic].

Response, Ex. 5, at 5. Petitioner also asserted that he was "unaware that the substituted competency procedure was inadequate for determining my competency to plead until October 29, 2004, after the time for appeal expired." Id.

In a separately-filed, lengthy pleading entitled "Request to Allow Proof by Affidavit, Depositions, Oral Testimony, or Other Evidence, to have Counsel Appointed, and for Permission to Proceed as a Poor Person," Petitioner stated that when he entered into the stipulation of his competency "the judge told Defendant he would never be sent back to Oklahoma State Penitentiary again; and defense counsel told Defendant that if he went back to Oklahoma State Penitentiary, he will automatically be brought back to court for a new trial." <www.oscn.net> (docket sheet in State of Oklahoma v. Jimmy Randall Shoulders, Case No. CF-95-426, and pleading accessed on December 4, 2006). Petitioner attached an affidavit to the pleading in which he made the same averment. In this affidavit, Petitioner also averred that his "stipulation rested on agreement of district attorney and was part of what influenced me to enter into it." Id. As cause for his failure to raise these allegations previously, Petitioner averred that he was "a quadreplegic [sic] who cannot write and have very great difficulty in speaking and being understood [and] [n]o one would file post-conviction application for me until now." Id. The post-conviction application was denied. Response, Ex. 6 (summary order entered February 1, 2005, by Hetherington, D.J., State v. Shoulders, Case No. CF-95-426, District Court of Cleveland County).

On April 1, 2005, Petitioner filed a third post-conviction application in the district court. Response, Ex. 7.  In this application, Petitioner again raised the issue of "unfulfilled promises by Department of Corrections" and the prosecution in the retrospective competency proceeding.   Id. at 3A. However, Petitioner for the first time asserted that he was not competent at the time he entered the retrospective competency stipulation and that therefore "all proceedings were invalid and must be redone." Id.  Petitioner also contended that he was denied an appeal from the decision in his second post-conviction proceeding through no fault of his own because he did not receive a copy of the order denying his post-conviction application until March 3, 2005, and "[t]he judge assigned to adjudicate my application failed to monitor and ensure timely notice as required by the rules." Id. at 3, 3C.  The district court denied Petitioner's third post-conviction application on its merits but granted Petitioner's request for leave to appeal out of time the decision in his second post-conviction proceeding. Response, Ex. 8.  Instead of appealing the decision denying his second post-conviction application, Petitioner filed two motions in the district court on January 17, 2006, and on April 6, 2006, seeking dismissal of the criminal charges in Case No. CF-95-426.  The motions were denied. <www.oscn.net> (docket sheet in State of Oklahoma v. Jimmy Randall Shoulders, Case No. CF-95-426, and pleadings accessed on December 4, 2006).

## II. Competency as Tolling Mechanism

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted in April 1996, 28 U.S.C. § 2244 was amended to impose a one-year period of limitation upon the filing of a petition seeking a writ of habeas corpus by a person in custody

pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1).  As an Oklahoma prisoner seeking federal habeas relief, Petitioner's habeas Petition is governed by the AEDPA's amendments. See Lindh v. Murphy, 521 U.S. 320, 336 (1997)(AEDPA's amendments apply to habeas petitions filed after the AEDPA's effective date of April 24, 1996).

Under 28 U.S.C. §2244(d)(1)(A), the one-year limitation period generally begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  The one-year limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2).   Additionally,  the  one-year  limitation  period  may  in  rare  and extraordinary circumstances  "be subject to equitable tolling." Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891 (1998).

Petitioner's plea in the previously-described criminal case was entered on July 13, 1995.  Petitioner's petition for a writ of certiorari to appeal the conviction was denied by the OCCA on November 18, 1998. Response, Ex. 2. In the same order, the OCCA affirmed the district court's denial of Petitioner's application to withdraw his plea.  Petitioner's opportunity to seek review of the OCCA's decision by writ of certiorari to the Supreme Court expired three months later, on February 18, 1999. See Locke v. Saffle, 237 F.3d 1269, 1272 (10th Cir. 2001)('Under the statute, a petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until ... 'after the United States has denied review, or, if no petition for certiorari is filed, after the time for

filing a petition for certiorari with the Supreme Court has passed.'")(quoting <u>Rhine v. Boone</u>,

182 F.3d 1153, 1155 (10th Cir. 1999)).   The one-year limitation period for filing a federal

habeas petition challenging the Petitioner's conviction began to run on February 19, 1999.

On November 9, 1999, Petitioner filed his first post-conviction application in the district

court.   At that time, 263 days of the statutory limitation period had run.   Pursuant to 28

U.S.C. § 2244(d)(2), this post-conviction proceeding tolled the running of the statutory

limitation period through February 18, 2000, when the district court denied the post-

conviction application, and during the thirty-day period in which Petitioner could have

appealed the district court's decision. <u>See</u> <u>Gibson v. Klinger</u>, 232 F.3d 799, 804 (10th Cir.

2000)("regardless of whether a petitioner actually appeals a denial of a post-conviction

application, the limitations period is tolled during the period in which the petitioner could

have sought an appeal under state law").   Following the tolling period that ended on March

20, 2000, Petitioner had 102 days within which to file his federal habeas petition in

compliance with 28 U.S.C. § 2244(d)(1).[1]  Absent equitable tolling exceptions, the one-year

limitation period expired 102 days later, on June 30, 2000, more than six years before

Petitioner filed the instant Petition.

Petitioner concedes his failure to file a petition within the statutory limitation period.

In his Petition and initial Reply to the Response, Petitioner contended that he was entitled to

---

[1]Although Petitioner filed subsequent post-conviction applications in the district court, none
of those applications were filed during the applicable limitation period, and therefore no additional
tolling periods extended the limitation period pursuant to 28 U.S.C. § 2244(d)(2).

equitable tolling of the limitation period because he was mentally incompetent at the time he entered his plea and remained incompetent during the ensuing period of time until the date he filed the instant Petition on August 23, 2006.  Petition, at 14; Petitioner's Objection to the Report and Recommendation (Doc. # 6); Petitioner's Reply.  In Petitioner's initial Reply, Petitioner states that he was assisted by inmates in filing his three post-conviction applications in state court and that he

> never understood what the prison law clerks filed in his behalf due to petitioner having been shot twice in the head which have [sic] left petitioner severely mentally impaired.  Neither does petitioner understand the extent of the pleadings now being filed in his behalf.  Petitioner merely understands that if he places his 'thumb print' here, he will go home, which is where he wants to be.  At least, this is what law clerks told him would happen.  Petitioner has never even been to the prison law library because he is a wheelchair bound prisoner and the three prisons he has been housed at are not wheelchair accessible.  Even if someone had taken petitioner to the prison law library in his wheelchair, petitioner would not have learned of the one year statute of limitations, or understood it if he did, due to his severe mental condition.

Petitioner's Reply, at 2-3.  In Petitioner's Reply to Respondent's Supplemental Response, Petitioner contends that, alternatively, the tolling period should be equitably tolled because he lacked "direct access to a prison law library" due to "his quadriplegic, wheelchair-bound condition."  Petitioner asserts that because "the pleadings filed by the law clerks in petitioner's behalf were not properly prepared," the prison's provision of inmate law clerks rather than direct access to a prison law library "amounts to interference by prison officials with petitioner's right of access to courts" and warrants equitable tolling of the statutory

limitation period.

In Respondent's Response to the Petition, Respondent asserts that the Petition is time-barred. Respondent has provided a certified copy of the transcript of the three-day hearing conducted in the Cleveland County District Court to determine Petitioner's competency to stand trial. Volumes I, II, and III, Transcript of Proceedings Had on the 25th, 26th, and 27th Days of May, 1995 before the Honorable Janet A. Foss, Special Judge (and a jury). Respondent has also provided a certified copy of the transcript of the hearing conducted in the District Court of Cleveland County on July 13, 1995, in which Petitioner entered his plea and was sentenced in accordance with a plea agreement. Transcript of Proceedings Had on the 13th Day of July, 1995 Before the Honorable William C. Hetherington, Jr., District Judge. Additionally, Respondent has provided a certified copy of the transcript of a hearing conducted in the District Court of Cleveland County on February 20, 1997, in which Petitioner appeared with his court-appointed counsel and moved to withdraw his plea. During that hearing, Petitioner asserted that he was not competent to enter the plea and personally informed the court that he also wished to withdraw the plea because "I didn't do it...." Transcript of Proceedings Had February 20, 1997, District Court of Cleveland County Before the Honorable William C. Hetherington, Jr., District Judge, at 6.

In this circuit, the § 2244(d)(1) limitation period "may be subject to equitable tolling." Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891 (1998). In Miller, the circuit court contemplated that extraordinary circumstances, i.e., "a constitutional violation [that] has resulted in the conviction of one who is actually innocent or

incompetent," may warrant equitable tolling of the § 2244(d)(1) limitation period. Id. at 978. Equitable tolling is appropriate, for instance, "when a prisoner is actually innocent" or "when an adversary's conduct - - or other uncontrollable circumstances - - prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period" but is not appropriate in circumstances amounting to "excusable neglect." Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). Nevertheless, the Tenth Circuit has recognized that § 2244(d)(1) "requires inmates to diligently pursue claims" in state and federal courts. Miller, 141 F.3d at 978. Accord, Gibson, 232 F.3d at 808.

Whether the limitation period for federal habeas purposes should be tolled for Petitioner based on his claim of incompetency depends on whether he had a mental impairment between February 19, 1999 (when the statutory limitation period began to run) and June 30, 2000 (when the statutory limitation period expired), which amounted to extraordinary circumstances beyond his control, making timely filing of a petition impossible, and for which equitable tolling should be applied. If Petitioner was actually incompetent during all or a portion of the statutory limitation period, equitable tolling of the limitation period is warranted for the period of incompetency, which may or may not render his Petition timely filed pursuant to 28 U.S.C. §2244(d) depending on the duration of Petitioner's actual incompetence.

"The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." Godinez v. Moran, 509 U.S. 389, 401 n. 12 (1993). Petitioner bases his contention of incompetency at the time of his

plea on the report of two state mental health professionals of a competency evaluation of Plaintiff completed for the district court in May 1995. Petition, Ex. A.  Petitioner contends that this report reflects that he was not competent to stand trial. Petition, at 6(b).  However, a review of the transcript of the competency hearing held in the state court in Petitioner's criminal case shows there was conflicting evidence presented as to Petitioner's competency to stand trial.  Although Drs. Head and Featherston repeated at the competency hearing their conclusion in their written report that Petitioner was not competent to stand trial, another mental health professional, Dr. Jones, testified that, based on his evaluation of the Petitioner's medical records in Oklahoma and Kentucky, the report of Drs. Head and Featherston, an interview and testing of Petitioner, and interviews of nursing personnel, Petitioner was competent to stand trial.

The testimony at the competency hearing showed that Petitioner had an organic brain disorder as a result of the 1980 shooting. (TR 419).  The brain disorder resulted in deficits in motor functioning and memory functioning.  However, when Petitioner was interviewed in Kentucky in April 1995 before he was brought to Oklahoma, one of the law enforcement officers, Scott Singer, testified that Petitioner remembered numerous details of the events immediately preceding the 1980 shooting which resulted in his injuries and the death of the homicide victim.  (TR 740-752).  The transcript of the plea proceeding also reflects that Petitioner testified he understood that he was charged with the murder of the victim, "Terry," that he did not remember shooting anyone, that he did not desire a trial and understood he would receive a life sentence which meant "[L]ife," that he wanted to enter a plea and

14

understood he was not admitting anything, that he understood it was up to him whether or not to enter the plea, that the evidence presented in court against him was pretty strong and he was choosing to enter a plea, and that no one was making him enter the plea. Supplemental Response, Ex. 1 (Transcript of Proceedings Had on the 13th Day of July, 1995 Before the Honorable William C. Hetherington, Jr., District Judge).   The presiding judge questioned Petitioner and ascertained that Petitioner's court-appointed attorney had discussed a plea with Petitioner more than once.   The presiding judge also ascertained through questioning Petitioner that it was Petitioner's decision to enter a plea.   Petitioner's attorney advised the court that Petitioner had been found competent by a jury in a competency hearing and that since the competency hearing Petitioner had been able to discuss with the attorney the merits of the case sufficiently to allow Petitioner to understand the nature of the charge and to question the attorney about relevant issues.   The attorney further advised the court that Petitioner remembered details of the day of the shooting up until just moments before the shooting and that although he did not remember the shooting he understood that the evidence was strong that no one else could have committed the crime.   The prosecutor summarized the evidence against Petitioner and Petitioner's attorney also described the evidence gathered by law enforcement officials following the homicide.   Defense counsel advised that the only possible defense to the crime was that Petitioner could not possibly have shot himself twice in the head, "medically speaking," but that there was no medical evidence to support this theory and there was no one else present who could have shot Petitioner.   Supplemental Response, Ex. 1, at 16.   Petitioner was again questioned as to whether he understood the

15

proceeding, to which Petitioner responded affirmatively.  Petitioner was advised again of the meaning of the his <u>Alford</u> plea and Petitioner stated he understood the trial court was "finding me guilty" and would sentence him. <u>Id.</u> at 18-19.  The Petitioner was advised about the consequences of the plea with respect to possible parole and stated he understood that no promise was made as to the availability of parole.  The presiding judge accepted the plea and sentenced Petitioner in accord with the plea agreement.  Petitioner was advised that he could ask to withdraw the plea within ten days, and Petitioner stated he understood this advice and further stated that he did not want to remain in the county jail for ten days.

Petitioner has not presented any evidence, other than the report of the two state mental health professionals presented at the competency hearing, that he was incompetent at the time of the plea and remained incompetent during and after the statutory limitation period.  The transcript of the plea proceeding does not support Petitioner's assertion of incompetence at the time of the plea, and institutional records presented by Respondent in the Supplemental Response do not support Petitioner's assertion of continuing incompetence.  Supplemental Response, Exs. 3-13.  In an affidavit presented with the Supplemental Response, a case manager at the Lexington Assessment and Reception Center avers that she managed Petitioner from January 12, 2000 through September 25, 2000, and that during this time she visited with Petitioner on a regular basis concerning his classification and he "clearly understood all questions and responded appropriately" although he "argued the topic of his competency." Supplemental Response, Ex. 14.  In another affidavit presented with the Supplemental Response, a registered nurse employed at the Dick Conner Correctional Center

avers that she has observed Petitioner since his arrival at that institution on April 28, 2006, and that in her medical opinion Petitioner has the mental cognitive capacity to reason and comprehend what he is told, that he routinely communicates his needs to the medical staff at the facility and that he "clearly appears to understand [other inmates and staff] and responds in a manner that demonstrates understanding." Supplemental Response, Ex. 15.  In an institutional report reflecting Petitioner was interviewed on April 12, 2001, with respect to the issue of parole, the investigator stated that Petitioner "appears to have good cognitive skills and .... limited mobility in one arm and one leg" and medical parole was not recommended. Supplemental Response, Ex. 11.  Additionally, the institutional records reflect that in 2000 and 2001 Petitioner pursued a grievance seeking reimbursement for an item of allegedly lost property. Supplemental Response, Ex. 10.  Petitioner presented copies of property inventory forms to support his grievance. Id.  The institutional records submitted by Respondent reflect that Petitioner often asked for assistance with writing correspondence, locating missing property, receiving "gang pay," or to request a wheelchair, shoes, leg braces, and other personal items. Supplemental Response, Ex. 3.  None of these records indicate that Petitioner was considered seriously mentally impaired by medical or prison staff, that he did not adequately comprehend the responses he received to his requests, or that he was unable to interact with prison staff in a rational manner.  In one letter from Petitioner addressed to an administrative law judge in Oklahoma City, Oklahoma, dated January 29, 1998, Petitioner states that with respect to a social security claim for child entitlement benefits there is a possibility Petitioner is the father of the child, that DNA testing may have

17

proved this relationship and that, if so, he had no objections to the child receiving benefits from his social security contributions. Supplemental Response, Ex. 4. The correspondence reflects that Petitioner's signature was witnessed by a case manager at Oklahoma State Penitentiary, but there is no indication in the record that Petitioner did not author this very comprehensible letter. Id. In short, Petitioner's claim of incompetence beginning at the time he entered his plea in state court and continuing through the relevant statutory limitation period is contrary to the record and wholly without merit.

Petitioner's alternative claim for tolling is based on the constitutional right of access to the courts first recognized for inmates in Bounds v. Smith, 430 U.S. 817 (1977). Petitioner does not explain why the pleadings filed by the inmate law clerks who assisted him were "not properly prepared" in his opinion. The record shows that Petitioner had access to inmate and staff assistance to prepare pleadings and correspondence throughout the relevant period of time for filing a habeas petition. Contrary to Petitioner's claim of obstruction by prison officials in pursuing collateral remedies, Petitioner filed a state court post-conviction application during the relevant statutory limitation period. Petitioner has not shown that any prison official or the lack of direct access to a prison law library prevented him from timely filing a habeas petition. Rather, the record shows that despite his limited physical abilities Petitioner was very capable of following court procedures, filing pleadings, and understanding his legal rights during the statutory limitation period. Moreover, Petitioner's ignorance or lack of direct access to relevant law, such as the AEDPA, does not support equitable tolling. Gibson, 232 at 808.

18

Petitioner has not shown that extraordinary circumstances beyond his control warrant equitable tolling of the statutory limitation period. Accordingly, because the applicable statutory limitation period has expired, and no equitable tolling is warranted, the Petition should be dismissed with prejudice on the ground that it is time-barred.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DISMISSED as untimely. Petitioner is advised of his right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by   January 8th  , 2007, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The Petitioner is further advised that failure to make timely objection to this Supplemental Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   18th   day of   December   , 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

19